Hey Police Department. Counsel. Your Honors, my name is Tyson Mutrix. I represent the appellant Sarah Watkins in this case and I've reserved five minutes for rebuttal. In this appeal we challenge the District Court's dismissal of our client's claims and we are going to be discussing five issues today. Before I get into those issues though, I do think it is important to address the standards for surviving a 12B6 motion to dismiss. As you know, a complaint must offer more than mere labels and conclusions to survive a motion to dismiss. It must articulate facts when accepted as true, state a claim to relief that is plausible on its face. This plausibility requires masks for enough facts to raise a reasonable expectation that discovery will reveal evidence of the conduct. The plaintiff in question, the complaint in question here adheres to the standard presenting detailed factual allegations that render Ms. Watkins' claims not just conceivable but indeed plausible. I'm going to first turn to the constitutional and statutory claims that were raised by Ms. Watkins. This stems from a traffic stop where my client was the appellant. She was pulled out of her vehicle. She was tased without provocation. She was thrown to the ground. She was pinned in the officer's seat and was beaten with a baton. This happened not only by one officer but multiple officers. As alleged. As alleged. As alleged with no identification of which officers did what other than the initial stop. Your Honor, we did allege specifically Officer Metcalf. It was based on the report. Very difficult to identify which other officers specifically participated in the additional strikes and tasing. But we did specifically allege Officer Metcalf. I wanted to ask you about that as well, counsel. Obviously you're pre-discovery here. But again, the only specific allegations were a specific officer's name was Metcalf. The others are referred to as defendant officers. Is that enough to meet the plausibility standard? And do you have any cases where that has been held to be sufficient? I do acknowledge that it is tough, Your Honor. I would say it is enough in that by their specific actions of not intervening at the very least, they do have some culpability here. And there are cases that do establish that it's that and honestly, off the top of my head, I cannot recall a case that doesn't mention the requirement that the need to step in. If you don't step in, then it is a violation. You're referring to the allegations that she was being hit with a baton and the other officers stood there and didn't do anything? Yes, Your Honor. The allegations as I read them, what you got is that Officer Metcalf is specifically identified as the person who handcuffed her, restrained her, pinned her down, right? But then the rest of them are just sort of like defendant officers engaged in pepper spray, that they struck her with a baton and this all happened while she was pinned down. But you never identify anything about which individual officers other than there are these officers that were called to the scene, all right? So you've got Metcalf, some specific things, and then you've got the rest of them just being on the scene and then some of them did this and some of them watched and did nothing. And is that specific enough to survive at the 12B6 stage? I do believe Judge, at the 12B6 stage, I believe if this were a motion for summary judgment and we had nothing else, I would say no, absolutely not. But due to the limitations that the plaintiff has or the opponent has in the situation where we're very limited by what's in the police report, we have very limited access to any other information regarding the officers. These officers are represented, so it's not like we can go and ask them. So I would say at the 12B6 stage, yes. Motion for summary judgment, no. Because at this stage, all you can possibly have is what your client knew and what was available in the police report that was available to her. Yes, Your Honor. All right. And then given that, this is as specific as can be alleged. That is correct, Your Honor. And obviously we did everything we could to try to get as much information as we could, but this is the limitation that we had. So, Counselor, in addition to meeting the plausibility pleading requirement in a qualified immunity case, you also have to show that the right that you're asserting is clearly established. I don't normally like to jump straight to that and I don't see anything in your brief where you provide any authority that this right was clearly established. Judge, and maybe I'm wrong, I believe I cited White v. McKinley where it does discuss establishing whether a right is clearly established for qualified immunity. And if I did not... But I'm referring to actual cases showing that if an officer beats someone with a baton and they're not resisting, that that's a violation of their Fourth Amendment rights. It's fairly easily done, but I don't see anything in the brief that establishes that fact or that law. Yes. You may. Yes. I did cite the Woodbridge-Strickland case which discusses qualified immunity. It's not available if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the individual or he took action with malicious intention, which we also did cite, to cause a deprivation of constitutional rights or other injury. Citing is not the same as alleging. See, I think that you're missing kind of the point. The point is that they're raising, is the clearly established basis for constitutional liability required to be pled? Is it an element to the offense that must stand in the pleading? Or is it something that through the discovery process that you can ultimately develop and then present, right? And so I think that the defendants have actually argued that it needs to be pled, that it's an element that must be found in a complaint. And frankly, it could be raised in the complaint as simply as saying there are cases that establish that the use of excessive force against a restrained and pinned person who poses no risk, which is what your complaint otherwise alleges, violates the Constitution of the United States as an excessive force claim, you know? And that would get you there. And so does the absence of that allegation, does that render the pleading defective? I think that's the question. Well, and I think there may be, there's another way to address that. That's one way. The other way would be, have you waived it by not briefing? Yeah, Your Honor, I would say that I did brief, it was briefed sufficiently, I would say. If I did not, then yeah, it would be waived. The, to answer the, your question, Your Honor, is the, there are specific counts in, for example, paragraphs 27 through 29 of the complaint where we do specifically not only address the actions that were taken by the officers, but also the constitutional violations by the officers as well. And so I would say that that would satisfy those requirements that you're, that you're talking about. Yes, and so what you're saying, for example, the recitation of the 4th and 14th Amendments in paragraphs 27, and again in paragraph 28, that that is sufficient to preserve N-33, which also adds the 8th Amendment, that that is sufficient to, to preserve the, the clearly established question? Correct, Your Honor, and if, to address something else you said too, there, when it comes to really whether the officers knew, when we're talking about the Wood case, whether or not they, they reasonably should have known, I mean, they're, they're taught constitutional law. They're, these are things that officers are well aware of. And what's your post-Iqbal best Eighth Circuit case for this proposition? Your Honor, I would say that the Which, which goes beyond the notice pleading days and tries to, to translate the substantial modification of notice pleading in Iqbal and Twombly into what's got to be pled today in an excess force case. Your Honor, the, I'm quickly trying to, I've got my quick notes that are, I've got a couple cases that are not post-Iqbal, and I'm getting some Well, you've got almost all of them. Yeah, correct. And so I, I believe that, and I'm trying to recall the year of Iqbal, but the, I do know that the Peter Pearson case is an 09 case and the White case is a, is an 08 case, which I believe are post-Iqbal, but I, I, I honestly don't know off the top of my head the, the year of, of Iqbal. The, I also do want to address, there was, in the district courts Your Honor, I, I remember, I, I have had a case, excess force case, father and son, I think Brousseau was the name, and it probably was a summary judgment case, but it got into what, and the son was seized, put in the back of a police car, and then tased, and they said, oh, excess force, he was, he couldn't go anywhere and so forth. And we, and we said no, given his conduct, he was a risk, and this tasing, although there were maybe other alternatives, and maybe not, we upheld, and I think it was summary judgment, but it was before this case, and so anybody pleading an excess force case, which there's tasing and seizing, should be thinking about how, how much do I have to plead along these lines. And, Your Honor, that, that is correct, and, and there are several cases that say that just by the fact that they are restrained and they're tased, that doesn't mean it's an excessive force. We did allege. One of the purposes of Iqbal and Twombly is to avoid having everybody having to get to the summary judgment stage and burn up a lot of litigation costs and judicial resources. And, and I do agree with that, and that's why we, we did allege that this is, was done without provocation. This was done after she was restrained by multiple officers. This was done, this was a, a female that was by herself, that was not resisting. But it doesn't say why she, why, why was she on the premises? This is one where she was, it was a, this is an odd one because she was pulled over near the airport, and so she pulled over onto airport property. It, it was, it's, it was the areas controlled by the City of St. Louis Police Department. Okay, but, but you can allege this is what she was doing, and this is what she told Metcalf, and despite that, he pulled her out at blah, blah, blah. And, Your Honor, I would say that we... It does, it just says, all I want to do is get to summary judgment, because if I can get to summary judgment, I can settle. That's definitely not the position we take, Your Honor, but I would, I, I do understand the point. I, I would say that we did, I believe, go far enough in our complaint to, to allege what we needed to, to, to get past this stage. And I am, I have just over, just under three minutes, so if I could reserve the rest of my time, I'd appreciate it. Mr. Nelson? Good morning. May it please the Court, my name is Leo Nelson. I represent the appellees in this case, the City of St. Louis, and the individual police officers. As I read this case, it really comes down to just two issues. One is whether the District Court committed error when it dismissed Ms. Watkins' Count 1 Fourth Amendment claims against the individual officers for the reason that on the face of the complaint, the officers are entitled to qualified immunity. And the other issue is whether Ms. Watkins stated a cause of action against the City in Count 2 under Section 1983 because of the claimed harm by the City's official policies, unofficial customs, and failure to train its officers. I'd also like to reinforce what the District Court pointed out, that Ms. Watkins had two bites at the apple with regard to the individual officers' claims of qualified immunity. The defense of qualified immunity was first raised by the officers on February 16 in a motion to dismiss. You don't have to go through the procedural history. Let's get to what we're arguing about. So Counsel, the District Court seemed to fault Ms. Watkins for not pleading the specifics of her own conduct. And we've held in the Weatherly case that a defendant can't render a complaint defective by asserting an affirmative defense, and the possible existence of defense is not a ground for a 12b6 dismissal unless the complaint is defective on its face. So could you address that? Is there any case law saying she had to assert the specifics of her own conduct? I can't point to any case law right now. There might be case law in the brief. What I'm getting at is that they seemed to fault her for not defeating an affirmative defense in her pleading. Okay. Well, in her pleading, she doesn't allege that she was wrongfully stopped. She just said she was stopped for an alleged traffic violation. She faults Metcalfe for that. She faults Metcalfe for ordering her to step to the back of the vehicle to investigate the alleged traffic violation. And she faults him for handcuffing her without warning. She does not. You know, it seems to me that you look at all that, but really the heart of the pleading is at some point, I'm restrained, I'm pinned to the ground, and while pinned to the ground and restrained, thereby posing no risk to anyone because I can't do anything, I was tased, I was pepper-sprayed, and I was hit with a baton. Right? That's what the allegation is. And more specifically, I'm looking at paragraph 29A of the complaint. Okay. Because it says, and why isn't 29A sufficient? Let me get there. First of all, let me just correct in the statement, she was not tased. She was pepper-sprayed. You're right. I was confusing it with Brozart, which, by the way, I was trial judge on. So thanks for affirming. It wasn't easy. It was not, I'm sure. Well, excuse me. The complaint does not, if you read the complaint, even in the most favorable way possible for the plaintiff, it doesn't I just sold you the paragraph. No. That's what Judge Erickson was paraphrasing, at least as I read the complaint. That paragraph specific, why doesn't that defeat the trial court's 12B6 analysis? These are conclusory allegations, Your Honor, as I read them and as a trial court read them. An assertion the defendant was negligent is rather conclusory. But it has to be in there because it's an element of the claim. But the complaint doesn't specifically show how the defendant, in this case, Officer Metcalf, was negligent. It just shows that he, argues that he did these things. Was he the only appellee? Right, but we don't know what the other appellee was. Wait a minute. You just said, you just answered the question in terms of Metcalf. I thought everybody except maybe Thompson was an appellee. But we don't know what the other, the defendant officers did. I mean, they are just locked into. Okay, so that's part of the answer. And maybe that's part of the answer to what's wrong with 29A. But if, what has to be added? Let's suppose one officer did all of this and there was one defendant. And the paragraph 29A is the operative allegation of a 1983 claim. What is deficient about it? It doesn't speak to what Ms. Watkins was doing to provoke the officers. Exactly. And that is always the question. It comes back to just what Judge Gras originally asked. Ordinarily, the answer is, you know, we've got an answer that comes in at some point. And it says, by the way, she was doing A, B, C, D, and B. And sometimes there's actually attached as Exhibit A to the answer an affidavit of the officer setting forth what happened. And then on 12B-6, you can go ahead and say, you know, this is in here and it's sufficient. Even viewing it in a light most favorable, the failure to plead what she did that may have provoked this response may be sufficient for us to reach the question. But here none of that happens. Here you just say the complaint is deficient on its face. And while it is a bare-bones pleading, right, and post-Iqbal and Tuomly would probably like to see a little more fact laid in, but it does allege facts. It doesn't just simply say they were deliberately indifferent and negligent in that they used excessive force against Ms. Watkins in violation of the Constitution. That is a summary allegation that has no meat to it at all. This actually has facts. She was pepper sprayed. She was beat with a baton. She was struck multiple times while being restrained. And viewing it in a light most favorable to the plaintiff, you'd say restrained means, well, you're not capable of doing anything that you have been rendered defenseless. And you're now having force asserted on you. And that force is in violation of the Constitution. Now, it seems to me that in the big four squares of the picture, that probably gets to a colorable pleading. And it has some plausibility. Now, you say it doesn't, and you say it doesn't because she didn't say what she was doing. And she was doing something else, and we kind of know that because of what's in the record but not before us at this stage, right? In summary judgment, all of this becomes a much easier thing because we can look to those police reports and we can look to the statements. But at this point, they're not in front of us. Well, considering your point, though, Judge Erickson, the officers are still entitled to qualified immunity because they Well, it seems to me that's where you come down is that, yes, they get qualified immunity. And, yes, qualified immunity requires an individualized examination. Yes. And probably that can be done at the 12B6 stage, which is routinely done at the summary judgment stage. Yes. So 29A flunks that test because we don't know which officer did what. Correct. And so how can they survive? Well, I think probably Metcalf survives, but the rest don't. That's a reasonable takeaway from the factual record that you have in front of you. I didn't, you were not speaking into the mic. Okay. I missed every word. I'm sorry. I'm sorry. That is reasonable. That's a reasonable inference, reasonable takeaway from the factual record that you have in front of you. We don't have a factual record. We have a pleading. Yes. Well, we can't make any factual findings. We can't go beyond the complaint in this case because we're still pleading. Well, it's a factual record. I'm talking about the facts alleged in the complaint. Okay. Counsel, what if a plaintiff has, as alleged, been hit with a baton and pepper sprayed while restrained, but she doesn't know exactly who did what? All she knows is that it was Officer A, B, and C who were there. What does she have to plead? I think she has to do some pre-pleading discovery, sunshine neck requests, that type of thing. I can't understand. Would you speak up and in the mic? I'm sorry. We're coming in from COVID and my voice still isn't where it should be, Your Honor. You can raise the podium, you know. Has this come up? Yeah. All right. Your question, Judge Graz, was in a situation that you described, what does the plaintiff do? Typically, the plaintiff, you know, has done her homework, has served Sunshine Act requests, has interviewed witnesses, and so has a factual basis for the allegations. They have to do discovery before they file a complaint. You have to do due diligence, but they don't have to do discovery. No. No. But, you know, typically in cases like this, I see sunshine neck requests. So I'm not one of that in this case. You know, but if you look at it hypothetically and you change, you tweak the facts very, very slightly, what if the woman who was struck, had been struck in the head and suffered a brain injury such that she lost consciousness and had no recollection of the incident, but there was a bystander who was able to say, yeah, these officers did that and that lady was pinned down at that point and she wasn't moving, right? And if that's all you got, that's all you got, right? I mean, the idea that, I don't know, I'm just having a hard time trying to figure out, like, why there's an obligation on the plaintiff to allege all that they were doing once you get to the point where you're restrained. I mean, I get where if you're making a claim that you were not properly stopped, you have to plead what you were doing. But, I mean, if you said I was properly stopped, not a problem, but then excessive force was used against me when I was restrained. I mean, I don't see it. Okay. You know, anyone who has read our excess force cases in the last decade, anyone who has read our excess force cases in the last decade, including one, I think, more than one in bank, would know you don't, A, you plead better than this as a plaintiff, and B, you don't file a motion to dismiss. You gather up your affidavits and you file a preliminary summary judgment motion. Now, there's no number limit on summary judgment motions. And you get enough out on the table so we don't have this kind of a frustrating appellate exercise. I wish the word would get out. Sure. That, you know, dickball and trombly, yes, they changed the world, but it's still the world of the federal rules. All right. I take your point, Your Honor. I think the officers are still entitled to qualified immunity. Probably so, but if not on this record. Well, because plaintiff has not shown that the officers violated a clearly established right. There is nothing in her complaint. Well, we do have cases that stand for the proposition that a person who has been rendered incapable of resistance, which is what is essentially alleged here, has a right to be free from excessive force, right? And that continuing to use force against a person who's already been rendered, you know, incapable of resisting violates the Constitution. A nonviolent person who has been rendered incapable of either resisting or flight, if you then beat them up, that's excess force under our, I mean, how far back do you have to go to get well-established? It's maybe even into the 1990s with this court. The complaint doesn't support that. The complaint doesn't. It just alleges that. It alleges it and it's pretty thin, but it says it. I'm looking at Graham v. Bonnet from this court in 2021, which held that the plaintiff must point to existing circuit precedent involving sufficiently similar facts to squarely govern the officer's conduct in a specific circumstance. Is that a 12B6 case?  Grigor was a... It was Graham. I wrote Grigor and it was a very complicated record with an issue. This is Graham v. Bonnet, Your Honor. G-R-E-G-O-R-E, right? No, G-R-A-H-A-M. Oh, Graham. Graham v. Bonnet. It's a summary judgment case, though. You know, summary judgment's a different world. I mean, it looks like Judge Erickson, Joan Erickson, granted summary judgment in favor of the defendants, right? And so this is 12B6 and the world just becomes sort of like, hey, read the complaint. I'm running out of time. I just wanted to summarize the second point of my argument, is that the district court did not commit error when it dismissed Ms. Watkins' count two claims against the city because the complaint failed to plead sufficient facts of an official policy custom that violated her constitutional rights or a failure to train. And with that, unless you have any further questions, I'll close. And I thank you for your consideration. All right. Thank you. For rebuttal. Counsel, just to give you a warning, I'd like to ask for a moment of silence. I'm going to ask about the second claim. Could you address whether the Monell claim was sufficiently claimed? Yes, Your Honor. And that was the sole thing I wanted to discuss on rebuttal was count two because I had not addressed it yet. The Eighth Circuit has made it clear that to survive on the motion to dismiss, the appellant or the plaintiff is not required to explicitly reference the unconstitutional policies or customs. Although we do go pretty far in our allegations, the complaint must simply contain sufficient allegations from which one could infer that conduct complained of resulted from an unconstitutional policy or custom. In this complaint, we presented several instances from which such a reference can be drawn. These include allegations that the city of St. Louis failed to instruct, control, supervise, discipline, and train their officers appropriately, did not adequately monitor officers against whom excessive force complaints had been made. What support is there? This is a one-incident complaint. Yes, Your Honor. What Eighth Circuit one-incident complaint satisfies Monell? We did cite in the complaint, although it wasn't specific to specific cases, we did cite that or we did allege prior lawsuits. We allege prior claims against one or more of the defendants. And so even though we did not specifically mention the case, we did make those allegations. Prior claims don't establish. So anytime someone can go through and see that St. Louis City police officers have had 10 excess force complaints in the last year, that's sufficient to hold the city into a case? No, I wouldn't say that, Judge. What I would say is that once you take into consideration the actions that were taken, you also consider any prior claims. You consider how the officers approached this specific situation. If you do have any specific instances, any specific policies that you can point to. What have you alleged that should put the city to that litigation expense? I do know in paragraphs 12 through 13. No, not 12 and 13. I'm looking at 43 and 44. Could that possibly be what you're talking about? But what it basically says, there have been complaints in at least two lawsuits. And that they are related to defendants under these circumstances relating to excessive force. Then 44 is the defendant, City of St. Louis, ignored or rejected the complaints. 45, they've ratified the unlawful conduct. And that as a direct and approximate result, Ms. Watkins was severely injured, right, in 46. But the problem with all those, they're pretty conclusory, right? I mean, they're just saying, like, they've got complaints in two lawsuits. They didn't do anything. They ratified excessive force. You know, and those are really kind of legal conclusions more than they look like facts. And the question that I have is, are they factually supported? Are they factually pled well enough to establish them an out claim? I would say that the specific instances, for example, like 41, where we allege failed to thoroughly investigate or review unauthorized and excessive use of pepper spray and baton devices, restraint of persons in crisis. Yeah, and specifically by the St. Louis Airport Police Department. Correct, correct. I would say in situations like that, I would say, yes, this is sufficient. Again, paragraph 41. Now, we've had this issue over and over. What cases are cited at the 12B6 stage on this? We're just saying, I've gone through their records, and, boy, St. Louis, or this government authority gets, has these complaints all the time, and they're still getting them. So it's an unconstitutional practice not to stop it. We did cite Jenkins v. County of Hennepin and then Crawford v. County of Boone, where they both established the existence of a nonconstitutional policy. We did cite those. I don't recall whether those were 12B6 or a motion for summary judgment motions.  Thank you, Your Honors. Thank you, Counsel. Case raises recurring issues that are never easy. An argument has been helpful, and we'll take the case under advisement.